John C. Gaut, Special J.,
delivered the opinion of the Court.
The complainants filed their hill in the Chancery Court at Gallatin, on the 14th day of March, 1865, against J. R. A. Tompkins, Executor of the last Wills and testaments of Miss Anna J. Banks, and Miss Mary H. Banks, late of Sumner County, Tennessee. A portion of complainants were alleged, in their bill, to have been the former slaves of Miss Anna. J. Banks, and all the others, except Squire Newman, were once the negro slaves of Miss Mary H. Banks, deceased; and they further aver, that they were emancipated and set free by the respective Wills of their said former owners; and they further charge, in their said bill, that they are the devisees and legatees of the entire estates, both real, personal and mixed, of the said two Misses Banks, after the payment of their respective debts; and they pray for a construction of said Wills, and their rights to said respective estates, decreed to them. Squire Newman, a; man of color, was not the slave and property of either of the Misses Banks, but he claims a legacy under the Will of Miss Anna J. Banks, and is, therefore, made a party complainant^ and asks for a declaration of his rights, before the Court. It is averred, in complainants’ *548 bill, that Miss Anna J. Banks had been dead about six years; and Miss Mary H. Banks, about two years.
The respondent, Tompkins, the executor of each one of said Wills, admits, in his answer, that the two Misses Banks died about the time stated in complainants’ bill; and that at the March Term, 1865, of the County Court of Sumner County, that being the first County Court of said County since the war, he produced the respective Wills of the said Misses Banks in said Court, which were proven in said Court; and that he qualified, as executor of each one of said Wills, and entered upon the execution of the trust enjoined npon him therein; and while investigating the conditions of said estates, but before any action in the premises, he was enjoined by complainants. Certified copies of the respective Wills of Miss Anna J. and Mary H. Banks are annexed to complainants’ bill.
At the September Term, 1865, of the Chancery Court, at Gallatin, James J. Banks appeared in Court with his answer; and, upon affidavit, he was permitted by the Court to make’ himself a defendant in the cause, and to- file his answer to complainants’ bill, in which answer he avers that he and his brother, Benjamin ¡Banks, are first cousins to the two Misses Banks, and their next of kin, and are entitled to their respective estates, both real and personal, because, he alleges, amongst other things, that, at the date of said Will, complainants were slaves, and, by the law of the land, as such slaves, they could take nothing under said Wills; and that the devises and bequests in the same to complainants were void, and the legacies to them ■ are *549 lapsed; and furthermore, he insists, in his answer, in substance, that complainants can take nothing by virtue of the devises and bequests of said Wills, except by a strict compliance with all their provisions — that is, they must be transported to the Western coast of Africa, as a condition upon which they can take the devises and bequests of their respective former owners, under their respective Wills.
After the filing of said answers, at the September Term, 1865, it appears, from the record, that said cause was set for hearing upon bill and answers, and the Court decreed in favor of complainants, declaring their right to freedom in the State of Tennessee; and that they were entitled to receive and enjoy the property, both real and personal, devised and bequeathed to them by their respective former owners;' and that by the change in the organic law of the .land, complainants were not bound to be transported to the Western coast of Africa.; and the Court referred the cause to the Master for an account, etc.; from which decree, the defendant, James J. Banks, alone, appeals to this Court.
It appears, from this record, that Miss Anna J. Banks and Miss Mary H. Banks, two maiden sisters, citizens of Sumner County, in this State, on the 5th day of August, 1858, made and published their respective last Wills and testaments. ■ By the provisions of each Will, the testatrix thereof devises to her sister, if living at the time of her death, the use and enjoyment of all the testatrix’s real and personal property, during the lifetime of the survivor, for her comfort, support and maintenance during life; and after her death, to *550 be disposed of as afterwards directed in said Wills. Said Wills are almost identical, in tbeir provisions as to the emancipation of tbeir respective slaves, and tbe bequest of each testatrix’s real and personal property, to and for the use and benefit of her respective slaves.
It is the duty of the Court to construe said Wills, and carry out the intentions of the testatrix in each, if it can be done, without contravening the public policy, or the laws of the land; and in the construction of the same, we are relieved from embarrassment, because of the clearness and perspecuity of language employed in said Wills. The third clause of Anna J. Banks’ Will is in the following words: “Having long entertained conscientious and religious scruples upon the subject of slavery, and the slaves I own being family servants,, and faithful and meritorious, I will, that immediately after my death, or after the death of my sister Mary, if she should survive me, but not before, the whole of my slaves, to-wit: (here setting out their names,) and any increase they may have, shall be set free, and transported to the Republic of Liberia, on the Western coast of Africa.” The fourth clause gives some special legacies to certain slaves, mothers of children, not necessary to be here noticed. The sixth clause is in these words: “I give and bequeath all the rest and residue of my estate, both real and personal, including moneys on hand, or moneys due at my death, bank stock, etc., as follows: I direct my real and personal estate, immediately after my death, or after the death of my sister Mary, if she should survive me, but not before, to be sold by my executors, or the survivors, to the best ad *551 vantage,” etc. And further on in said clause, she directs that the proceeds of said property, and moneys on hand and owing to her, shall he paid over by said executors to her before mentioned servants, upon their embarkation from the United States to the Republic of Liberia. The testatrix then appoints the executors trustees for her said servants, until they carry out the provisions of her Will. In the seventh clause, the testatrix appoints R. A. Tompkins and Judge Thomas Maney, Executors of her Will; and then she makes this request of them: “And I do most earnestly entreat them to see the same carried into effect in every particular, but more especially in regard to the freedom of my slaves, and guarding their rights, as I have that object more at heart than any other; and they are requested to see them safe to the place of embarkation.”
The provisions of the Will of Miss Mary H. Banks, are precisely similar to the Will of her sister, in favor of her slaves at her death, or at the death of Anna, should she survive the testatrix; and they need not be here stated. And we believe that it is manifest from said Wills, that the more leading object each testatrix had in view, was, that their respective negro slaves should be absolutely and unconditionally free, from and after her death, or the death of the survivor; and that the slaves of each should have and enjoy, after the payment of debts, all the property and effects of their respective testatrix, or the proceeds of such property, as set forth in each Will. It is insisted in argument,’ that it is a con *552 dition precedent to the taking of such legacies by complainants, under said Wills, that they should embark for Liberia, on the Western coast of Africa; that such was the intention of the testatrix. We cannot assent to such reasoning, from the plain and unambiguous language of the testatrix. The language of the testatrix is: “Having long entertained conscientious and religious scruples on the subject of slavery, and the slaves I own being family servants, and faithful and meritorious, I will, that immediately after my death, or that of my sister, if she should survive me, the whole of my slaves shall be set free;” and she directs her executors to sell all her real and personal property, and to pay over the proceeds, with all her moneys on hand, and the moneys owing to her, to her said servants, upon their embarkation to Liberia. We think this is an absolute and unconditional bequest of freedom to the slaves, and of testatrix’s estate to them, in like ' manner. It is true the Wills direct that complainants be transported to Liberia. But we must look to the slave policy and laws of Tennessee, as they existed on the 5th day of August, 1858, when said Wills were made and published. As the laws then were, the State, the Government .would only give her assent to the emancipation of slaves, upon their transportation to Liberia, on the Western coast of Africa: See Code, sec. 2699. And we must presume that the testatrix knew the law, and made the provisions of her Will to conform to it, in order to confer perfect freedom to her family servants, to whom she was much attached; and that *553 they might certainly enjoy her entire estate — they being alone the especial objects of her bounty. We cannot believe that the testatrices would have directed complainants to be transported to Liberia, if, at the date of said Wills, the laws of the State of Tennessee had been such, as to permit their emancipation and continued residence in the State.
By the change of the Constitution of the State of Tennessee, in February, 1865, abolishing involuntary slavery, except as a punishment for crimes, whereof the party has been -legally convicted, and which was ratified by the people of the State,' the slave policy of the State, as it existed on the 5 th of August, 1858, was abrogated and annulled, so far as there was any necessity for the removal of com-plianants to Liberia, before they can enjoy the freedom and legacies, so humanely bequeathed to them by their former rowners. And by virtue .of said change in the organic law of the State, complainants are free persons of color, and have a legal right to remain in the State of Tennessee, and take the respective legacies and bequests to them, under the respective Wills of Miss Anna J. Banks and Miss Mary H. Banks. The executors, in each Will, are expressly constituted trustees by each testatrix, to hold the property, or its proceeds,' bequeathed to their respective slaves, in trust for them, until it could be paid over to them as free persons of color. The executor now holds said devises and bequests in trust for the complainants, the former slaves of said two maiden sisters, and for no other person or persons.
*554 The rule of law is, that the intention of the testatrix shall always prevail, if it can he carried out by the Courts without conflicting with the laws of the land; and this rule is too well established to require the production of authorities to sustain it. And the intention of each one of said testatrices, being so manifest upon the face of each Will, that they intended to emancipate their respective slaves, and that said slaves should have their respective property, after paying their debts, as in said Wills is provided, and all legal objections to complainants remaining in Tennessee, as free persons of color, being removed, we think it is clear that complainants are entitled to take said bequests in said Wills, and remain in Tennessee; and that said defendants, James J. Banks, and his brother Benjamin Banks, as next of kin, and heirs-at-law of the said Misses Banks, are not entitled to any portion of said estates.
The fifth clause of Miss Anna J. Banks’ Will, gives to her executors in trust, if necessary, a sum not to exceed one thousand dollars, to purchase the freedom of a negro man, named Squire — reciting, as a reason for so doing, that “we have hired him for many years, and he has been faithful to us.” And in the sixth clause of her will, after providing for the transportation of Squire to Liberia, and his support for six months, in the event of his purchase by her executors, the testatrix makes the following bequest to Squire: “I also give the said Squire, the sum of fifty dollars, to be paid to him by my executors, upon his embarkation for the Republic of Liberia, which is all he is to receive *555 out of my estate.” Said Squire, "by the description of Squire Hewman, is a party complainant in this cause, asking a construction of said Will, and a declaration of said rights under the same. We believe that Squire is not entitled to said one thousand dollars, devised by Miss Anna J. Banks to her executors, to be used, if necessary, in purchasing his freedom. His freedom was the motivé which induced the' testatrix to make the bequest of said sum, and only to be used, if necessary, to. secure his freedom. That bequest was not to him, because he was the slave and property of a stranger, and not the property of the testatrix. The bequest was upon a contingency; that is, if it should become necessary to expend that much of her estate, to secure his freedom. Since the date of said Will, Squire has been emancipated and set free by the Government, the people of the State, in said amendment of the Constitution of the State of Tennessee, forever abolishing slavery. This freedom is an accomplished fact, made so by the supreme law of the land. It is not now, nor can it be hereafter, necessary, to use said one thousand dollars, or any part of it, by said executors, to purchase his freedom. The cherished object of said testatrix has been fully accomplished, without the expenditure of any portion of her estate. And said one thousand dollars must go to the complainants, who were the slaves of Miss Anna J. Banks, and the increase of the female servants, if any, according to her Will.
But we believe complainant, Squire, is entitled to the said specific bequest of fifty dollars, out of the estate of *556 Miss Anna J. Banks, that being the sum bequeathed to him by the testatrix, and no more.
We perceive no error in the decree of the Chan-, oellor in the Court below, and we affirm the same, and direct a decree in this Court, according to the principles of this opinion; and remand the cause to the Chancery Court of Gallatin, for further proceedings.